Burks, J.
This is an appeal from a decree of the circuit court of Frederick county. The bill was filed by "William L. Clark, as administrator of the estate of James Bowles, deceased, against Thomas K. Campbell, his wife, and others, to enforce the lien of a judgment against a house and lot in the city of Winchester. The judgment was recovered in June, 1872, on a bond exe *653 cuted several years before the war, and was duly docketed on the 8th day of August, in the same year, in the county court of the county in which the lot was ated. At the time the suit was instituted in which the judgment was recovered, Campbell was the owner in fee simple of the lot aforesaid, and before judgment was recovered—indeed, within six days after the commencement of the suit, to-wit: on the 29th day of April, 1872, he, by deed of that date, conveyed the lot absolutely to one Samuel L. Larew, and the latter afterwards, by deed dated the 10th day of March, 1873, conveyed the same lot to John-’W. Grim, the father of Campbell’s wife, subject to the following declaration of trusts:
“To have and to hold unto the said John W. Grim, trustee, in trust for sole and separate use of Mary Elizabeth, wife of T. E. Campbell, and her present or any future children she may have by her present husband, the said T. E. Campbell, not to be subject in anywise to the debt, contract or control of the said T. E..Campbell. It is understood and agreed that the said trustee may at any time, at the request of said Mary E. Campbell, sell said property and reinvest the proceeds of sale upon like trust as above stated. It is further understood that until said property is sold, it is to be a home for the said T. E. Campbell and Mary E., his wife, and the survivor of them, with remainder to be equally divided amongst the children then living of said T. E. Campbell and Mary E., his wife, and the heirs of such as may be dead; and the said S. L. Larew hereby warrants such title to said property as was conveyed to him by the deed from T. E. Campbell and wife aforesaid.”
The bill, after stating the above facts, concludes with the following allegations and prayer for relief:
“Tour orator denies the truth of the recitals of consideration, which are made in these deeds, and he charges that the deeds were made to prevent your orator from *654 subjecting the real estate of the said T. X. Campbell to the payment of the bond upon which he had instituted against him, and thus to delay, hinder and defraud the estate of which your orator is administrator. Your orator does not know what children there are of the said Thomas K. Camphell and Mary E., his wife, who' are made in part.beneficiaries, under the deed of March the 1.0th, 1873, but will, by an amended bill, make the parties defendant hereto, so soon as their names are ascertained.
“ The said Thomas X. Campbell has no property out of which your orator’s claim can be paid, except the property referred to in said deeds.
“ Eor as much, then, as your orator is remediless, save in a court of equity, he prays that the said Thomas X. Campbell and Mary Elizabeth Campbell, his wife, and the said John W. Grim, trustee, may be made defendants to this bill, and may be required to answer the same; that your honor will set aside the said deeds, and subject the property therein referred to, to the payment of your orator’s said claim, and that your honor will grant to your orator such other relief, general and special, as may be consistent with equity, and be required by the nature of the case. May it please your honor to grant to your orator the commonwealth’s writ of spa.”
Official copies of the two deeds were filed as exhibits with the bill.
The consideration of the deed from Campbell to Larew is thus recited therein: “The sum of twenty-five hundred dollars ($2,500) paid as follows: twenty-three hundred and fifty dollars cash in hand, the receipt whereof - is hereby acknowledged, and the balance, one hundred and fifty dollars, by rent, received in advance by said Samuel L. Larew, from the said Thomas X. *655 Campbell for rent for tbe space of one year from this date of tbe property hereinafter to be conveyed,” &c.
The deed from Larew to Grim (trustee) recites the •consideration thereof as “the sum of twenty-five hundred dollars cash in hand paid, the receipt of which is hereby acknowledged,” &c.
Grim, who was a party as trustee, did not answer the bill, but Campbell and his wife filed separate answers, to each of which the complainant replied generally, and the cause being brought to a bearing on the pleadings and the depositions taken, tbe circuit court rendered its decree that the house and lot aforesaid was liable for the payment of the complainant’s debt, and should be subjected therefor.
The case is before us on an appeal from this decree allowed to Mrs. Campbell.
The first assignment of error by her counsel is set out in the petition for appeal in the following words: “ The ■case stated in the bill is utterly overthrown by the proofs, and the relief is granted upon an entirely new case set up by the proofs, viz: that while the deed to Lareio is valid, yet the property is liable in the hands of Grim, trustee, to the payment of Campbell’s debts, because purchased by Mrs. Campbell with her oum earnings.”
The rule in equity practice, that the allegations and proofs in a cause must correspond, is too familiar to need the citation of authority for its support. Eelief will not be granted on a case proved, which is materially different from the case stated in the bill. Whatever the prayer, the relief granted must be consistent, or at least not inconsistent, with the case made by tbe bill. A different rule would be attended oftentimes with surprise and prejudice. If, therefore, a complainant finds, in the. progress of the cause, as sometimes happens, that there is a discrepancy between the facts proved and those stated in 4he bill, he may, in some cases, obviate the difficulty by *656 amendment, which is liberally allowed. While, however, the rule is as has been stated, under the liberal spirit inclines courts of equity to get over form in favor of substance, relief will not be denied unless the case stated and the case proven are so materially variant as to Preven* a decree in favor of the plaintiff. Chancellor Carr's opinion filed in Zone's Devisees v. Zane, 6 Munf., 406, 416.
I proceed to enquire whether there is that material variance between the statements of the bill and the facts proved, alleged in the assignment of error aforesaid. ■ It was to facilitate this enquiry that I have copied a portion of the bill in this opinion. Recurring to this it will be seen that fraud is the gravamen of the bill. The language is, “your orator denies the truth of the recitals of consideration which are made in these deeds.” This is in effect to charge that the consideration is feigned and the recitals false; and the bill further charges that the deeds were made to prevent the complainant from subjecting the real estate of the said T. X. Campbell to the payment of the bond upon which he had instituted suit against him, and thus to delay, hinder and defraud the estate of which the complainant is administrator.
The answers of Campbell and wife are singulaily briéf for such a case, each being embodied in about a dozen lines, and both in almost the same words.
Mrs. Campbell, after demurring to the bill for want of equity, admits the execution of the deed by Larew to her trustee, Grim, and then says: “Respondent denies that this deed was made to prevent complainant from subjecting the real estate of the said T. X. Campbell to the payment of the bond referred to in the bill. She denies that it was made to delay, hinder and defraud the estate of which complainant is the administrator. And not admitting any of the allegations of said bill, save *657 those herein expressly admitted, she prays to be dismissed »,-i , , ^ with her usual costs.
Ho direct reference is made in this answer, or in answer of her husband, to the consideration of either of the deeds, nor is any explanation given or attempted. As Mrs. Campbell was a married woman and presumably without estate of her own, it might reasonably have been expected that in her answer she would have shown or attempted to show how, when, and from what source she derived the sum of twenty-five hundred dollars, stated in the deed as the consideration for the house and lot conveyed to her use. She does not, however, even allude to the matter, and contents herself with an answer which is substantially nothing more than a general plea of denial of the allegations of the bill. Such an answer under such circumstances is certainly not calculated to impress a court of equity very favorably with the respondent’s case.
As the answers give us no information on the subject, let us look to the evidence and ascertain, if we can, what was the consideration, if any, of the two deeds. The evidence consists, with incidental circumstances, mainly of the depositions of Larew and Grim, the latter the father of Mrs. Campbell and her trustee.
It would seem from these depositions that Campbell had no other property than the house and lot which he conveyed “to Larew, and after that conveyance was regarded as insolvent. He is represented as a man of dissipated habits, and Larew testifies that “he was drinking continually and gambling all during the war.” It seems he was absent from his home and family in "Winchester mostly during the war, returning occasionally when the federal troops appeared. With this knowledge of Campbell, his habits and circumstances, Larew says that at Martinsburg during the war, in the fall of *658 1863, he lent him $1,500—not in Confederate currency, hut in greenbacks—to be returned in a few days. He it, according to his account, knowing it \yas to be used in gambling. Campbell lost the money, he says, an(l it has never been returned to him (Larew). He never took any bond, note, or evidence of the debt, " He pretends to have made repeated applications to Campbell to secure him on the house and lot; finally, but not till Bowles’ administrator had brought his suit, more than eight years after the alleged loan was made, he succeeded in getting a conveyance of the property at the price stated in the deed, $2,500. This he professes to have paid in the debt of Campbell, which he estimates at $1,800—$150 in rent of the property in advance, and the residue in cash. Ho vouchers and other evidences of the settlement are produced, and Larew is the only witness. He makes Campbell’s debt at the date of the deed in April, 1872, only $1,800, when the principal sum ($1,500) lent in 1863, with the accumulated interest, would have amounted to more than $2,200. He seems not to be certain as to what amount he paid Campbell in money, or whether he paid him anything, although, according to the estimated amount of Campbell’s debt, he must have paid him upwards of $500. He is asked this question:
“When you got the deed from Mr. Campbell, in which the consideration of $2,350 paid in hand is recited, did you pay him any money or any part of that consideration ? ”
“ Answer. I think I did; I think I paid the amount set out in the deed over and above the $1,800. I think I can say I did—that I paid him the money.”
By the terms of the deed, Campbell was left in possession of the property for at least a year. He seems never to have been out of possession. In less than twelve months afterwards, the conveyance was made to *659 Mrs. Campbell’s trustee for tbe alleged consideration of $2,500. Larew’s account of tbe transaction is that one night when the year had about elapsed, Mrs. Campbell and her father (Grim) came to his house and proposed to purchase the property and have it settled upon herself and her children. The bargain agreed upon was, that she should have it at the same price Larew had given Campbell for it, and the deed was accordingly drawn. “ Then,” said he, “ Mr. Grim and her paid me the money. 'Mr. Grim counted me the money on my table in my dining room. Mr. Grim had the money and she stood by; that’s just what was done. I think the amount of money I got was $1,800; I think it was the amount that Mr. Grim counted to me; Iawpuldn’t state positive about the amount.” In the same deposition he says that the amount he paid Campbell for the property was the amount stated in the deed, $2,500 or $2,350, paid partly in Campbell’s debt and partly in cash, and although he was to get the same price from Mrs. Campbell, yet she only paid him $1,800.
Mr. Grim, the father of Mrs. Campbell, was examined as a witness on behalf of the complainant the saíne day •on which Larew was examined, but before the latter gave his deposition. He was asked to state all he knew about the execution of the deed to Mrs. Campbell. He answered, in substance, that about nine or ten months after the sale by Campbell to Larew, Mrs. Campbell informed him that she could purchase back the property from Larew, and he advised her to make the purchase, and consented to act as her trusteethat this was the only conversation he ever had on the subject, and all he knew about it.
The following questions and answers were then propounded and given:
“Third question by same. Were you present when the deed was executed ?
*660 “Answer. No, sir; I was not. You might ask me questions from now till night and I don’t know no more.
“Fourth by same. The deed states that the consideration upon which Mr. Larew made it was twenty-five hun^red dollars, and that the said sum was paid in cash, Please state all you know about this ?
“Answer. I don’t know anything in the world about it. I told you I didn’t see any of the transaction. “Fifth. "Was the deed delivered to you ?
“Answer. No, sir ; and I never saw it.”
After Larew had^ testified and given the particulars before mentioned, as to the payment and counting the money in his dining room, Mr. Grim is then recalled by Mrs. Campbell’s counsel, against the objection of the complainant, and the following question is put to him:
“Mr. S. L. Larew has stated in his deposition that the money paid by Mrs. Campbell to him for the property was paid through jmu; please state your recollection of the matter ? ” He answered : “ It was a matter that had escaped my recollection, but when he spoke of it I remembered it very distinctly. I counted him out the money in his parlor. Mrs. Campbell was with me.”
He says further on cross-examination, that his impression is that it was twenty-three hundred and fifty dollars thus paid by Mrs. Campbell. Larew states the amount to be $1,800. Such is the confused, contradictory, unreasonable and improbable account given by these two witnesses of the alleged consideration of the two deeds. The statement that Mrs. Campbell paid to Larew for the house and lot either $2,350, according to her father’s testifnony, or $1,800, according to' Larew’s, is next to incredible. Grim and Larew both say she produced and paid the money; but from what source she obtained it, neither of them pretends to know. They intimate an opinion, that perhaps she might have saved it from her earnings during the war, in the baking business, and in *661 boarding soldiers of both armies. But, according to their account, her husband was generally absent from home during the war, and she had to support and her family of three children, then small, according to the ages proved, and one would suppose that she would not be able to save anything after support. It does not appear that she had any property or estate of her own, and her husband had nothing except the house and lot which was their home. If she accumulated this money during the war, she kept it for seven years, and no one, not even her father, knew she had it. She neither put it in bank nor invested it, nor loaned it out, nor made any use of it. If she had done so, as she probably would have done if she had that amount of money, it doubtless would have been shown in evidence.
I am satisfied in my own mind, from the evidence in, the cause, that there was no consideration for either of the deeds of conveyance, that both were entered into with the intent to hinder, delay and defraud the estate of Bowles, and therefore that the case made by the bill is the case made by the proofs.
But suppose I am mistaken in the conclusion that both of the deeds are fraudulent, and the proper deduction to he drawn from the evidence be, as contended, that the deed to Larew is valid, and that the consideration recited in the deed to Mrs. Campbell’s trustee was actually paid by her from her own earnings, still I should not regard the case as so materially variant from the case made by the bill as to deny to-the complainant the relief extended to him by the decree if this appropriation of these earnings were fraudulent. The prime object of the bill is to reach the property conveyed. The ground on which it proceeds is fraud in the parties to the conveyance. Both deeds are charged to be fraudulent. The failure of the complainant to invalidate the first deed should not preclude him from relief as against the purchaser under *662 the second deed, if such deed is shown to be fraudulent as against the complainant. The relief would be prethe same, whether both deeds were fraudulent or only the last one. In either case the property would be subjected to the complainant’s judgment,
This brings me to consider the question intended to’ be presented, as I understand it, by the appellant’s second assignment of error, and that question is whether, if the purchase money, as claimed, was paid by Mrs. Campbell out of her own earnings, she acquired a good title to the property as against the complainant’s debt ?
It is an undisputed principle of the common law that marriage is an absolute gift to the husband of all the personal estate of wrhich the wife is actually and beneficially possessed in her own right at the time of marriage, and such other personal estate as comes to her during the marriage. 1 Bright’s Husband and Wife, cb. 4, § 1, page 34.
The principle embraces her earnings, or the products of her skill nnd labor, as fully and completely as any other personal estate which comes to her during coverture. The common law makes them as absolutely the property of the husband as his own earnings. If she desires to secure them to herself against her husband and his creditors she may do so before marriage, and in contemplation thereof, by settlement to her separate use, and she will be protected in her rights in a court of equity, and she may be thus secured, even after marriage, but such post-nuptial settlement will be no protection against the creditors of the husband, existing at the time of the settlement, unless it is based on a valuable consideration.
The president of this court, in the opinion delivered in the case of Penn & als. v. Whitehead & als., 17 Gratt. 503, 527, said: “I take it to be a sound principle of law that ’ by no agreement or arrangement between husband and *663 wife alone, founded on no valuable consideration, can the profits of the future labor of either of them, much less of the husband alone, be secured to the use of them, either of them or their famity, in exclusion of the claims of their creditors existing at the time such agreement or arrangement is made; and any such agreement or arrangement entered into for the purpose of having that effect would be a mere contrivance to hinder, delay and defraud creditors, and would be null and void as to such creditors, according to the true intent and meaning, if not the literal terms of the statute. Code, ch. 118, §§ 1 and 2.”
It is not pretended, certainly it is not proved, in the case before us—and the burden of proof was upon the wife, (Blow v. Maynard, 2 Leigh, 29; William & Mary College v. Powell & als., 12 Gratt. 372; Price v. Thrash, supra, p. 515)—that there was any agreement or arrangement, founded on valuable consideration, entered into between Campbell and his wife, by which she was to have the exclusive use and benefit of the products of her skill or labor, and the voluntary appropriation of her earnings to the purchase of the property and taking the title to the trustee for the wife’s benefit, would have been a fraud.on the existing creditors of the-husband, and the conveyance would have been void, or a trust would have resulted which could have been enforced by such creditors to the extent of their debts. 1 Perry on Trusts, § 149, and numerous authorities cited in note. But it is contended by the learned counsel for the appellant that Campbell deserted his wife during the war, and that where the husband from drunkenness, profligacy, or other cause, shall neglect or refuse to provide for the support of his wife and children, or when he deserts her,, her earnings, afterwards accruing, are in equity her separate estate; and in support of this proposition he cites *664 1 Bishop on Married Women, §§ 212, 213, 732, and cases from reports, most of which are not to be had here.
In the section (212) cited supra from Bishop, it is stated that it has been held in Pennsylvania, on a careful consideration of the English authorities and the legal princ^es Solved in the case, that if the husband has deserted the wife, her earnings afterward accruing are, in equity, her separate estate. Other decisions to the like effect in the same state are referred to by the author. I do not find any like decisions referred to in other states. But I do not deem it necessary in this case to express any opinion as to the effect of desertion by the husband on the equitable right of the wife to her earnings accruing during the period of desertion. Ho desertion has been proved in this case. The husband was absent from home, according to the testimony of Grim and Larew, generally during the war, but he occasionally returned when the federal troops occupied the city of Winchester, and since the war closed, it seems, he has been constantly at home and with his family. He may have had good cause for leaving home for aught that appears, and it may have been better for himself and his family that he should leave, and his wife may have advised and consented to his leaving. J3he certainly makes no complaint in her answer of his abandoning her, nor, if such was the fact, does she even allude to it. Hnder such circumstances, his temporary absence cannot be reasonably construed to be desertion.
Hpon the whole case, I am of opinion to affirm the decree of the circuit court.
The other judges concurred in the opinion of Burks, J.
Decree affirmed.